Arthur G. Klein, J.
By the first four causes of action alleged in the complaint, the plaintiff, the owner and operator of a gambling casino in Puerto Bico, seeks to recover the sum of $3,000, evidenced by defendant’s check given in payment of a gambling debt. By the fifth, sixth and seventh causes of action, plaintiff seeks to recover the sum of $9,000, on the basis of various theories, the debt having been incurred apparently prior to the loss of moneys by gambling and by the sale of chips, a medium of exchange in the gambling casino. It is conceded that the chips were to be used by the defendant for gambling. The transactions occurred in Puerto Bico, where plaintiff is licensed under the laws of Puerto Bico to conduct said gambling casino. An indebtedness such as that incurred by the defendant, which is legal where incurred, and sued on here is enforcible in our courts. This has been enunciated in Tropicales, S. A. v. Milora (7 Misc 2d 281) and in Tropicales, S. A. v. Drinkhouse (15 Misc 2d 425) both decided in this court. The fact that New York has no law similar to that of Puerto Bico, legalizing gambling when conducted in a licensed gambling casino, does not preclude the enforcement of plaintiff’s claim in New York. ‘ ‘ Unless there is something immoral or fundamentally unjust in the arrangement, there is no policy of our State which forbids the enforcement of contracts or agreements which are legal according to the place of performance ” (Benton v. Safe Deposit Bank, 255 N. Y. 260, 267, and cases cited). However, as was pointed out by Mr. Presiding Justice Botein in Miltenberg & Samton v. Mallor (1 A D 2d 458, 460) “ Sometimes a transaction is so plainly prejudicial to the public good, so clearly repulsive to every concept of morality and fair dealing, that a court need not look further to ascertain whether it is also proscribed expressly by some statute. * * * ‘ In many of its aspects the term “ public policy ” is but another name for public sentiment ’ ”.
In view of present-day conditions, including the licensing of bingo by the State of New York, and the legalizing of pari-mutuel betting (N. Y. Const., art. I, § 9), gambling may not be said to be such a heinous offense or so clearly repulsive to every concept of morality that it would be contrary to public policy to enforce a gambling debt which was legally incurred, as is the case here.
The defendant has failed to sustain his defense that he was intoxicated or that the plaintiff plied him with intoxicants so *788 that he did not know what he was doing. Nor does the court credit his testimony that the plaintiff breached an agreement not to extend credit in excess of $7,000. I find that the agreement was simply to advise him when he had reached the $7,000 limit, which was done. The defendant then chose to continue gambling and to continue receiving advances. His counterclaim must also fall. It is likewise based upon alleged ‘ ‘ public policy
Judgment is accordingly awarded to the plaintiff in the sum of $12,000, with interest as demanded in the. complaint.